FILED
2019 Aug-05  AM 09:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| LEWIS EUGENE BROTHERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-cv-01557-JEO |
| ) | |
| NANCY BERRYHILL, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Lewis Eugene Brothers brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying him Supplemental Social Security ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. 1).[1] The case has been assigned to the undersigned United States Magistrate Judge pursuant to this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(a). (Doc. 10). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

## I. PROCEDURAL HISTORY

Plaintiff filed his applications for SSI and DIB on June 16, 2015, alleging disability beginning April 27, 2015. (R. 47, 139, 147).[2] After his applications were denied initially, (R. 68-77), Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 80). After the video hearing, the ALJ issued a decision on November 15, 2017, finding Plaintiff not disabled. (R. 14-26). Plaintiff then filed a request for review of the ALJ's decision, and the Appeals Council ("AC") denied Plaintiff's request for review. (*Id*. at 1-3). The matter is properly before this court.

## II. FACTS

Plaintiff was born on November 21, 1965. (R. 35, 139). At the time Plaintiff filed his applications he was 49 years old, but was a few days shy of his 52nd birthday on the date of the ALJ's decision. (*Id*. at 24-26). He alleges that he became disabled as of April 25, 2015, as a result of a broken neck, chronic obstructive pulmonary disease ("COPD"), cholesterol, high blood pressure, chest pain and carotid artery disease. (R. 186, 191).

Following Plaintiff's administrative hearing, the ALJ found that Plaintiff had

---

[2] References herein to "R. __" are to the administrative record found at documents 7-1 through 7-17 in the court's record. The page number references are to the page numbers in the lower right-hand corner of each page in the record.

not engaged in substantial gainful activity since the onset date or April 27, 2015. (R. 19). The ALJ further found that Plaintiff had the medically determinable severe impairments of status post cervical fusion, COPD, carotid artery stenosis and cerebral vascular disease.[3] (*Id.*). He also found that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment. (*Id*. at 20). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work, and, as such, determined that Plaintiff could return to his past relevant work as a tool sharpener and machine cleaner based on the testimony from the vocational expert ("VE"), descriptions from the *Dictionary of Occupational Titles* ("DOT") and Plaintiff's descriptions of his past work. (*Id*. at 21, 24-25). Based on the above, the ALJ concluded that Plaintiff was not disabled. (*Id*. at 25).

## III.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct.

---

[3] The ALJ found that Plaintiff's alleged impairments of high blood pressure and cholesterol were not severe because there was no evidence that they had more than a minimal effect on his ability to perform basic work activities. (R. 20). Plaintiff does not challenge this finding.

1420, 1422 (1971); *Mitchell v. Comm'r Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2015); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991). The court must affirm the ALJ's decision if substantial evidence supports it, even if other evidence preponderates against the Commissioner's findings. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990)).

## IV. STATUTORY AND REGULATORY FRAMEWORK

To qualify for benefits a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(b) & 416.920(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014).[4] The

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

plaintiff bears the burden of proving that he was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also* 20 C.F.R. § 404.704. The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id*.

## V. DISCUSSION

Plaintiff asserts four claims of error: (1) the ALJ erred in not ordering a consultative examination; (2) the ALJ failed to give proper weight to Plaintiff's "excellent work history"; (3) the ALJ failed to adequately develop the record with regard to Plaintiff's past relevant work; and (4) the ALJ's RFC finding is conclusory and violates SSR 96-8a. (Doc. 11 at ). The court addresses each issue separately below.

### A. Consultative Examination

Brothers first argues that the ALJ erred in not ordering a consultative examination. (Doc. 11 at 10-12). Brothers highlights that "[n]o treating physician expressed an opinion on impairments" and then states that in light of his excellent work history, the ALJ should have ordered a consultative examination to evaluate

Plaintiff's impairments.[5] (*Id.* at 10). The remainder of Plaintiff's argument is a series of block quotes explaining the standard by which an ALJ may order a consultative exam without any application to the facts presented by the record here.[6] (*Id.* at 10-12). The Commissioner responds that the ALJ was not required to order a consultative examination because the record was adequately developed. (Doc. 12 at 5-8). The court agrees with the Commissioner.

"[T]he ALJ generally has an obligation to develop the record. . . ." *Ingram v. Comm'r of Social Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). The ALJ's duty to develop the record encompasses an obligation to order a consultative evaluation "when the evidence as a whole is insufficient to allow [the Commissioner] to make a determination or decision on [the] claim." 20 C.F.R. § 404.1519a(b). However, when the record contains sufficient evidence to make an informed decision, the ALJ is not required to order a consultative examination.

---

[5] Brothers also states that the ALJ in this case "only approved 34% of claims in 2017." (Doc. 11 at 10). This statement, however, is not relevant to any of the issues presented to the court for decision.

[6] The cases cited by Plaintiff are distinguishable from the case at hand. For example, in *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984), "the ALJ failed to order a consultative examination by an orthopedist even though the SSA's consulting doctor recommended such an examination," but no medical source indicated that further testing or evaluation was necessary to evaluate Plaintiff's conditions. 734 F.2d at 522 n.1. Similarly, in *Rothfedlt v. Comm'r of Soc. Sec.*, 669 F. App'x 964 (11th Cir. 2016), the claimant requested additional testing and the ALJ denied the request. 669 F. App'x at 968. Here, Plaintiff never requested additional testing, and did not make any objections that the record was incomplete at the hearing. (R. 33-34, 42-43).

*See Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) ( "[T]he [ALJ] is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the [ALJ] to render a decision."). Sufficient evidence does not mean "absolute certainty" regarding a claimant's condition; the Social Security Act "requires only substantial evidence." *Id*. at 1210. Instead, the court will only remand a case for further development where the Plaintiff shows an evidentiary gap in the record that results in unfairness or clear prejudice. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).

Here, the evidence in the record provided sufficient information regarding Plaintiff's impairments to allow the ALJ to make an informed decision. Plaintiff's treatment for his impairments was well documented and thoroughly discussed by the ALJ. (R. 22-24). The ALJ first addressed Plaintiff's history of neck pain, specifically noting the injury his neck in 1983 where he suffered a compression fracture in a car accident, and the resulting cervical fusion surgery. (R. 22, 268-324). However, as the ALJ explained, following a subsequent exacerbation of the injury, Plaintiff was released to work with no restrictions in 2007, and returned to work until April 2015. (R. 21-24, 36-37, 166, 185, 212, 255). Thereafter, Plaintiff's treatment records contain no further complaints or treatment for neck pain- including no visits to the ER or to any free clinics. Instead, routine neck,

musculoskeletal, and neurological examinations were within normal limits with Plaintiff consistently presenting with a supple neck after the alleged onset date. (R. 390, 392-93, 476-77). Notwithstanding, the ALJ restricted Plaintiff to light work based primarily on his complaints of neck pain. (R. 24).

The ALJ then addressed the medical records concerning Plaintiff's COPD, but despite ongoing smoking, Plaintiff rarely complained of being out of breath, with the exception of February through June 2015 when he complained of flu-related cough. (R. 391-93). Diagnostic imaging of Plaintiff's chest at the time for reported COPD exacerbation and cough revealed no acute abnormality. (R. 22, 444). The ALJ also discussed the medical evidence related to Plaintiff's coronary artery disease and cerebral vascular disease and specifically addressed Plaintiff's complaints of chest pain. Although Plaintiff sought treatment for chest pain in June 2015, a stress test was clinically negative, and Plaintiff had normal systolic function and showed "good" exercise capacity. (R. 23, 479, 500). As the ALJ explained, Plaintiff did not seek any significant treatment for his neck pain, shortness of breath, chest pain, or similar symptoms after June 2015. (R. 22-23). Nor did the record suggest that Plaintiff required any additional treatment for his conditions. (*Id.*).

The regulations governing consultative examinations describe the situations

that may require the Commissioner to purchase a consultative exam "to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination." 20 C.F.R. § 416.919a. As discussed above, the evidence in this case was sufficient to support a determination regarding Plaintiff's medical conditions, and therefore the ALJ had no duty to order any further examination. The duty to develop the record is not triggered in every instance where more information could be useful, but when the record has "evidentiary gaps which result in unfairness or clear prejudice." *Graham*, 129 F.3d at 1422. Not only has Plaintiff not shown any unfairness or prejudice, he fails to even make such an argument.

**B. Work History**

Brothers argues also that the ALJ failed to give proper weight to his "excellent work history" in the ALJ's credibility finding. (Doc. 11 at 12-13). Brothers does not attack the ALJ's credibility determination directly, but instead argues that the ALJ's failure to make an explicit finding regarding his excellent work history renders the rest of his credibility determination is invalid. (*Id*.). To support his contention, Brothers cites to cases from other circuits which have found that a claimant's prior "good work record" justifies an inference of substantial credibility. *See, e.g., Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015);

*Allen v. Califano*, 613 F.2d 139, 147 (6th Cir. 1980). Plaintiff, however, does not cite to anything in the SSA, implementing regulations, or agency's sub-regulatory policies supporting his position that the ALJ must discuss or even consider work history as a favorable factor. Additionally, "the Eleventh Circuit has not had occasion to rule on the issue" of whether an ALJ's failure to consider a claimant's "lengthy and consistent work record" in evaluating a claimant's credibility is erroneous. *Mahon v. Comm'r of Soc. Sec.*, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017). Moreover, the Eleventh Circuit has upheld an ALJ's credibility determination that is supported by substantial evidence even when a plaintiff has a good work history. *See Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). In other words, excellent work history alone may be insufficient to enhance a claimant's credibility, but it does not necessarily result in a remand when it is not considered by the ALJ as long as the credibility determination is supported by substantial evidence. Therefore, because the ALJ is not required to "specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . enable[s] [the reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole," the record does not support a finding that the ALJ erred in determining Plaintiff's credibility without reference to his prior work ethic. *Dyer*, 395 F.3d at 1211 (alterations and quotations omitted); *see*

*also Evans-Sweny v. Comm'r of Soc. Sec.*, 2019 WL 949302, at *7 (M.D. Fla. Feb. 27, 2019) ("While Plaintiff is correct that an excellent work history may enhance a claimant's credibility, it does not necessitate remand in this case where the ALJ based her credibility finding on a careful analysis of the medical record and Plaintiff has failed to show the credibility finding was otherwise erroneous.").

### C. Past Relevant Work

Brothers next argues that the ALJ failed to adequately develop the record as to the physical requirements of his past work. (Doc. 11 at 13-18). The Commissioner responds that the ALJ adequately considered Plaintiff's prior work history, including the VE's testimony and the DOT, and substantial evidence supports the ALJ's determination that Brothers could perform his past relevant work. (Doc. 12 at 12-16). The court agrees with the Commissioner for the following reasons.

"The ALJ has a basic duty to develop a full and fair record." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015). Where "there is no evidence of the physical requirements and demands of the claimant's past work and no detailed description of the required duties was solicited or proffered," the ALJ "cannot properly determine" the nature of the claimant's past work, and, therefore, cannot say whether the claimant is still able to perform that work given

his current limitations. *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). The Eleventh Circuit has remanded for further inquiry, for instance, where the record contained "no evidence concerning whether [the claimant] used equipment, the size and weight of items she was required to use, whether she scrubbed floors or merely dusted, or whether she was required to move furniture" in her past work. *Nelms v. Bowen*, 803 F.2d 1164, 1165 (11th Cir. 1986).

Here, the record contains evidence regarding the demands of Plaintiff's past work as a tool sharpener and machine cleaner. Brothers completed a "Work History Report" as part of his application. (R. 212-14). For each of his former jobs, the form instructed him to answer a series of questions, including, but not limited to:

- "Describe this job. What did you do all day?"

- "In this job, did you: Use machines, tools, or equipment?"

- "In this job, how many total hours each day did you: Walk? Stand? Sit? Climb? Stoop? (Bend down and forward at waist) Kneel? (Bend legs to rest on knees) Crouch? (Bend legs & back down & forward) Crawl? (Move on hands & knees) Handle, grab or grasp big objects? Reach? "Write, type of handle small objects?"

- "Explain what you lifted, how far you carried it, and how often you did this."

(*Id*.). The form also asked Brothers to "[e]xplain what [he] lifted, how far [he] carried it and how often [he] did this." (*Id*.). Finally, it asked him to indicate for each job the "heaviest weight lifted," as well as the weight most "frequently lifted . . . from 1/3 to 2/3 of the workday." (*Id*.).

With regard to the machine cleaning job, Plaintiff described his duties as follows: "cleaning machinery with industrial chemicals." (R. 213). In answering the above questions, he further indicated that during each day while doing the job, he walked for 2 hours, stood for 5 and a half hours, sat for half an hour, kneeled for 10 minutes, and reached for 20 minutes. (*Id*.). He answered 0 hours for climbing, stooping, crouching, crawling, and writing, typing or handling small objects. (*Id*.). Brothers indicated that he handled big and small objects for 10 minutes each day. (*Id*.). When describing his lifting and carrying, Brothers stated that at the "beginning of each shift [he] had to get [a] 1.5 gallon bucket of chemicals." (*Id*.). The heaviest weight he lifted was 20 pounds, but he frequently lifted less than 10 pounds. (*Id*.).

With regard to the tool sharpener job, Plaintiff described his duties as follows: "sharpened scissors and kni[v]es in a[n] unvental[at]ed 8x8 room." (R. 214). In answering the above questions, he indicated that each day he walked for 1 hour, stood for 9 hours, and sat for 1 and a half hours. (*Id*.). He also stated that

he wrote, typed or handled small objects for 30 minutes each day. (*Id.*). He answered 0 hours for climbing, kneeling, crouching, crawling, and reaching, as well as handling, grabbing or grasping big objects. (*Id.*). The heaviest weight he lifted, including frequently lifted, was less than 10 pounds. (*Id.*).

At the hearing, Plaintiff's counsel questioned him about his past work experience. (R. 36-37). Additionally, the ALJ asked the vocational expert to describe Plaintiff's past relevant work as a cleaner and knife sharpener. (R. 42). While the vocational expert did not explicitly describe the tasks of a machine cleaner or tool sharpener, she classified both jobs as follows: "[t]ool sharpener, [DOT] 701.381-018. It's light, skilled, SVP of 6. And machine cleaner, [DOT] 699.687-014. It's classified as medium and unskilled with an SVP of 2. However, the record indicates it was performed at the light." (*Id.*); *see* 20 C.F.R. § 416.960(b)(2) (stating that an ALJ may consult a "vocational expert" and the "Dictionary of Occupational Titles" at Step Four). The DOT contains detailed descriptions of the duties and physical requirements associated with each occupation, as generally performed in the economy.

Recently, in a case very similar to the one at issue, the Eleventh Circuit concluded that "[t]he Work History Report, testimony of [claimant] and the vocational expert, and the DOT combine to paint a full picture of [claimant]'s past

15

relevant work . . . " and found that such evidence sufficient to compare the claimant's current abilities to the demands of her previous employment. *Holder v. Social Security Admin.*, 2019 WL 1934187, at * 4 (11th Cir. May 1, 2019); *see also Long v. Comm'r of Soc. Sec.*, 749 F. App'x 932, 934 (11th Cir. Oct. 19, 2018) (ALJ adequately developed demands of past relevant work in relying upon claimant's hearing testimony, claimant's Work History Report, DOT job description, and testimony of VE); *Frazier v. Berryhill*, 2019 WL 3220025, *5 (N.D. Ala. Jul. 17, 2019) (M.J. Ott) (same); *Parker v. Berryhill*, 2019 WL 2928841, *6 (N.D. Ala. Jul. 8, 2019) (M.J. Ott) (same). The ALJ here had the same information before him in making the determination that Brothers could return to his past work. The court finds that this determination is supported by substantial evidence and Plaintiff is not entitled to any relief.[7]

---

[7] Alternatively, the court finds that any purported failure by the ALJ to specifically address Plaintiff's relevant work history in his opinion is harmless and not a cause for reversal or remand for the reasons stated above. There was plenty of evidence in the record regarding Plaintiff's past work history and the demands of his past jobs as a tool sharpener and machine cleaner. *See Diorio*, 721 F.2d at 728 (holding that the complained-of error was harmless because it did not have an impact on the step being challenged); *Reeves*, 734 F.2d at 524 (rejecting a challenge to an ALJ's conclusion as harmless error when the ALJ had considered the relevant evidence in making the disability determination); *Hunter*, 609 F. App'x at 558 ("To the extent that an administrative law judge commits an error, the error is harmless if it did not affect the judge's ultimate determination.").

**D. SSR 96-8a**

Plaintiff's last argument is that the RFC finding in not supported by substantial evidence. (Doc. 11 at 18-21; Doc. 13 at 9-12). Specifically, Brothers contends that the RFC is conclusory and violates SSR 96-8a. (*Id.*). The Commissioner responds that the ALJ's RFC finding limiting Brothers to light work is not conclusory and complies with SSR 96-8p. (Doc. 12 at 16-20). The court agrees with the Commissioner.

SSR 96–8p regulates the ALJ's assessment of a claimant's RFC. Under SSR 96–8p, the "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p at 1. The regulation specifically mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." SSR 96–8p at 6.

The Eleventh Circuit has held that, even when the ALJ could have been "more specific and explicit" in his or her findings with respect to a plaintiff's

17

"functional limitations and work-related abilities on a function-by-function basis," they nonetheless meet the requirements under SSR 96–8p if the ALJ considered all of the evidence. *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007); *see also Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (an ALJ's RFC finding is sufficiently detailed despite lacking an express discussion of every function if there is substantial evidence supporting the ALJ's RFC assessment). In addition, the ALJ is not required to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to allow the court to conclude that the ALJ considered the plaintiff's medical condition as a whole. *See Dyer*, 395 F.3d at 1211.

Here, it is evident that the ALJ considered all of the evidence in the record in assessing Plaintiff's RFC. The ALJ specifically states that "the residual functional capacity has been assessed based on all the evidence," including all of Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on 20 C.F.R. §§ 404.1529 and 416.929 and SSRs 96-8p and 16-3p. (R. 21). The ALJ noted that he "considered the medical opinion evidence in accordance with the requirements of 20 C.F.R. § 1527 and § 416.927" and that he carefully reviewed Plaintiff's subjective complaints. (R. 22, 23).

After stating the above, the ALJ discussed the medical evidence of record, as well as Plaintiff's hearing testimony and subjective complaints. (R. 21-24). While he did not include each and every doctor visit in the record, the ALJ specifically detailed the medical records related to each severe impairment, including the medical opinions of record, Plaintiff's longitudinal history, his daily activities and his testimony and other statements in the record regarding his alleged limitations. (*Id*.). More importantly, the ALJ specifically discussed each limitation and why they were included or not included in the RFC determination and thoroughly explained the basis for the RFC determination. (*Id*.).

Plaintiff's citation to *Thomason v. Barnhart*, 344 F. Supp. 2d 1326 (N.D. Ala. 2004), for the proposition that the RFC assessment is unsupported by substantial evidence because there was no opinion evidence from a physician precisely matching the limitations in the RFC finding is unpersuasive. The determination of a claimant's RFC is an administrative determination left for the Commissioner and not reserved for medical advisors. *See* 20 C.F.R. § 404.1546. As such, the court concludes that the ALJ complied with SSR 96–8p, especially considering the fact that the ruling does not require a detailed analysis in the ALJ's written decision of a claimant's ability to perform each function.

## VI. CONCLUSION

For the reasons set forth above, the undersigned concludes that the decision of the Commissioner is due to be affirmed. An appropriate order will be entered separately.

**DATED** this 5th day of August, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge